**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2750
_____

S. M., by and through his parents, Michael C. and Danielle C.;
Michael Ciavarelli; Danielle Ciavarelli

v.

CHICHESTER SCHOOL DISTRICT,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 2:21-cv-04266
District Judge: Honorable Anita B. Brody

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 12, 2026

Before: SHWARTZ, MASCOTT, and McKEE, *Circuit Judges*

(Opinion filed: May 18, 2026)

_____

OPINION*

_____

McKEE, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Chichester School District ("Chichester") appeals the District Court's Order granting S.M.'s Motion for Judgment on the Administrative Record on Count I (Appeal from Administrative Decision), entering judgment in favor of S.M., and ordering Chichester to fund S.M.'s residential educational placement at the Melmark School through August 2028.

The District Court concluded that Chichester violated S.M.'s right to a free and appropriate public education ("FAPE") by failing to offer him residential educational placement, determining that "appropriate relief must ensure that S.M. can receive the residential educational programming he was denied for the roughly 36 months between the Hearing Officer's erroneous August 27, 2021 decision and the District Court's September 4, 2024 order" and requiring Chichester to secure and fund placement at the Melmark School.[1] Because Chichester has made clear that it will persist in challenging S.M.'s residential educational placement, notwithstanding prior rulings, "relief will only be appropriate if it protects S.M.'s ability to continue receiving the special education and related services he is long owed at the Melmark School without fear of displacement by Chichester."[2]

We can add little to the District Court's fine opinion. We will affirm for the reasons below.

---

[1] *S.M. v. Chichester Sch. Dist.*, No. CV 21-4266, 2025 WL 2404383, at *9 (E.D. Pa. Aug. 19, 2025).
[2] *Id.* at *10 (citation modified).

I.[3]

"We review the District Court's award of an equitable remedy under the [Individuals with Disabilities Education Act ("IDEA")[4]] for abuse of discretion."[5] "An abuse of discretion occurs when a district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."[6]

Chichester argues that the District Court's ordered relief "is a prospective FAPE Order formed as a compensatory education award when no compensatory education is due,"[7] that (1) violates the IDEA and (2) strips the individualized education program ("IEP") team of authority to change or challenge S.M.'s educational placement while also failing to place him in the least restrictive environment ("LRE"). We are unpersuaded.

The IDEA requires states that receive federal funding to provide a FAPE to all students with disabilities.[8] The IDEA's remedial provision expressly authorizes courts to "grant such relief as the court determines is appropriate."[9] Compensatory education is a retrospective, equitable remedy that "aim[s] to place disabled children in the same position they would have occupied but for the school district's violations of [the] IDEA"

---

[3] The District Court had jurisdiction under 20 U.S.C. § 1415(i) and 28 U.S.C. § 1331. We have jurisdiction to review a final order of the District Court under 28 U.S.C. § 1291.
[4] 20 U.S.C. §§ 1400–1482.
[5] *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 716 (3d Cir. 2010) (citing *Lester H. v. Gilhool,* 916 F.2d 865, 872 (3d Cir. 1990)).
[6] *P.N. v. Clementon Bd. of Educ.,* 442 F.3d 848, 852 (3d Cir. 2006) (citation modified)).
[7] Appellant's Opening Br. 4.
[8] 20 U.S.C. § 1412(a)(1)(A).
[9] 20 U.S.C. § 1415(i)(2)(C)(iii).

without intruding on an IEP's team's prospective authority.[10] Here, the District Court's award was individually crafted to remedy S.M.'s specific FAPE deprivation.[11] It carefully calculated the period of deprivation when Chichester "knew or should have known" that S.M. was not receiving FAPE and awarded placement that S.M. would have received but for the violation.[12] This Court has consistently upheld similar compensatory education awards, including where educational placement and intensive services were necessary to remedy FAPE denials.[13] Our sister court of appeals has also upheld a private school placement compensatory award.[14] Refusing to award compensatory education after a substantiated denial of FAPE would violate the IDEA's requirements and guiding principles.[15]

---

[10] *Ferren C.*, 612 F.3d at 717–18 (quoting *Reid v. Dist. of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005)).

[11] *See Reid*, 401 F.3d at 526 (stating that "the parties must have some opportunity to present evidence regarding [the child's] specific educational deficits resulting from his loss of FAPE and the specific compensatory measures needed to best correct those deficits").

[12] *M.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996).

[13] *See Lester H.*, 916 F.2d at 873 (concluding that "Congress . . . did not intend to offer a remedy only to those parents able to afford an alternative private education" and "granting 30 months of compensatory education to [a disabled student] beyond age 21" was not an abuse of discretion); *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 249 (3d Cir. 1999) ("An award of compensatory education allows a disabled student to continue beyond age twenty-one in order to make up for the earlier deprivation of a free appropriate public education."), *superseded by statute on other grounds as recognized by P.P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727 (3d Cir. 2009).

[14] *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1290 (11th Cir. 2008) (awarding compensatory education in the form of private school placement for a period of roughly five years or until the student obtained his high school diploma, whichever came first).

[15] The IDEA's six core principles include (1) FAPE, 20 U.S.C. § 1400(d)(1)(a); (2) appropriate evaluation, 20 U.S.C. § 1414(a)(1)(A); (3) an IEP, 20 U.S.C. § 1414(d); (4) instruction in the LRE, 20 U.S.C. § 1412(a)(5); (5) parent/student participation, (e.g., 20

We reject Chichester's assertions that the compensatory education award contradicts the IDEA or eliminates annual IEP review and violates the LRE requirement. An IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[16] Compensatory education is meant to support, not supplant, the IEP process. It neither dictates future IEP deliberations nor curtails Chichester's prospective Local Education Agency ("LEA") obligations. When, as here, the record supports a student's required residential educational programming to receive FAPE, compensatory education in the form of multi-year residential educational placement prevents displacement by the school district.[17] The District Court's order requires Chichester to fund Melmark unless "(1) [S.M.'s parents] ask Chichester for a different placement, program, or school; or (2) Melmark notifies the parties that its residential educational program can no longer meet S.M.'s educational needs."[18] Melmark and S.M.'s parents are members of the IEP team responsible for collaboratively developing and annually reviewing his IEP.[19] The District Court's order, which

---

U.S.C. §§ 1414(a)(1)(D), (b)(2)(A), (b)(4)(A), (c)(3), (c)(4)(A), (e)); and (6) procedural safeguards, 20 U.S.C. § 1415(b)(3).

[16] *Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 403 (2017).

[17] *See S.M. v. Chichester Sch. Dist.*, 2025 WL 2404383, at *10 (citing *S.M. v. Chichester Sch. Dist.*, No. 24-2727, 2025 WL 649894, at *2 (3d Cir. Feb. 28, 2025)) ("Chichester has 'litigated [S.M.'s] placement' at every possible turn.").

[18] *Id.* at *9.

[19] *See* 20 U.S.C. § 1414(d)(1)(B) ("'IEP Team' means a group of individuals composed of— (i) the parents of a child with a disability; (ii) not less than 1 regular education teacher of such child (if the child is, or may be, participating in the regular education environment); (iii) not less than 1 special education teacher, or where appropriate, not less than 1 special education provider of such child; (iv) a representative of the local educational agency . . . ; (v) an individual who can interpret the instructional implications

5

adequately protects IEP team deliberations from Chichester's unilateral control, is consistent with the IDEA. The record also establishes that Melmark is the LRE for S.M.[20]

Chichester also argues that Appellees failed to administratively exhaust their claims, and the independent expert process was tainted by ex parte conduct evidencing insurmountable bias in violation of the District Court's direction which amounts to reversible error. We disagree. Two prior panels have concluded that the exhaustion requirement was satisfied,[21] and one of those panels held that the District Court's reliance on the expert report was proper.[22]

Thus, the District Court did not abuse its discretion.

## II.

For the foregoing reasons, we will affirm the District Court's August 19, 2025 Order granting Appellee's Motion for Judgment on the Administrative Record on Count I (Appeal from Administrative Decision), entering judgment in favor of Appellees, and

---

of evaluation results, who may be a member of the team described in clauses (ii) through (vi); (vi) at the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate; and (vii) whenever appropriate, the child with a disability.").

[20] *See M.C.*, 81 F.3d at 394 (concluding a residential educational program was the LRE where "any attempts to reduce [the student]'s severe self-stimulatory behavior or improve his toileting, eating, and communication skills would succeed only in the intense atmosphere of a round-the-clock residential setting where a consistent educational program could be enforced throughout all of [his] waking hours").

[21] *S.M. v. Chichester Sch. Dist.*, No. 22-1612, 2024 WL 4262788, at *1 (3d Cir. Sept. 23, 2024); *S.M.*, 2025 WL 649894, at *2.

[22] *S.M.*, 2025 WL 649894, at *2.

ordering Appellant to fund S.M.'s residential educational placement at the Melmark

School through August 2028.[23]

---

[23] When this case was last before us, we noted: "This matter has a contentious procedural history. Barring a negotiated settlement, we trust that the District Court will soon decide the final merits of the case." *S.M. v. Chichester Sch. Dist.*, 2025 WL 649894, at *3. The District Court has now decided the matter on the merits but the tragically long and "contentious procedural history" continues. *Id.* Delay is particularly regrettable in cases such as this. We can only hope that delay and obfuscation are not part of a deliberate litigation strategy to extend this dispute until the issue of what can be done for S.M.'s welfare becomes moot because of his age. Although we acknowledge that the District Court's order imposes a financial burden on Chichester, "[t]he IDEA works because each school district bears the obligation to educate special needs students, often at substantial cost." *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 497 (3d Cir. 2012).